IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DENNIS P. MURPHY,
*in his capacity as Personal Representative of the*
WRONGFUL DEATH ESTATE OF CASEY
JORDAN MARQUEZ,

     Plaintiff,

v.                                                                Civ. No. 20-557 GBW/SMV

UNITED STATES OF AMERICA,

     Defendant.

<u>ORDER GRANTING MOTION TO DISMISS
FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM</u>

THIS MATTER comes before the Court on Defendant's Motion to Dismiss for

Lack of Jurisdiction and Failure to State a Claim. *Doc. 10.* Having reviewed the motion

and its attendant briefing (*docs. 19, 20*), the Court GRANTS the motion and DISMISSES

all the claims in Plaintiff's complaint WITHOUT PREJUDICE.

**I.    BACKGROUND**

*Factual Allegations*

This is a wrongful death case brought by Plaintiff, in his capacity as personal

representative of the Wrongful Death Estate of Casey Jordan Marquez. *Doc. 2 at 1, 5*

n.1; *doc. 5.* On December 7, 2017, William Atchison shot and killed two students at

Aztec High School before turning his gun on himself and taking his own life. *Doc. 2 at*

¶¶ 58, 61, 73.  One of those students was Ms. Marquez, a seventeen-year-old high school senior.  *Id.* at ¶¶ 61, 62.

The Federal Bureau of Investigation (FBI) had investigated Mr. Atchison as a potential school shooter more than a year before this shooting.  *Id.* at ¶¶ 19–22.  In March 2016, the FBI received a tip from "a participant in an online gaming website that someone had posted a comment soliciting advice on how to acquire a cheap assault rifle to commit a mass shooting at his former school."  *Id.* at ¶ 19.  The FBI traced the post to a computer server in Aztec, New Mexico that belonged to Mr. Atchison's older brother.  *Id.* at ¶¶ 20, 22.  FBI investigators interviewed Mr. Atchison and his family about the comment.  *Id.* at ¶ 21.  They concluded that Mr. Atchison had posted the comment in jest because he enjoyed acting as an internet troll and that he had no plans to secure a gun.  *Id.* at ¶¶ 22, 27.  Then, they closed the investigation.  *Id.* at ¶ 30.

*Procedural History*

On June 8, 2020, Plaintiff filed a complaint in this Court against Defendant under the Federal Tort Claims Act (hereinafter "FTCA") and New Mexico's Wrongful Death Act.  *Id.* at 1.  He alleges that the FBI investigators acted negligently in their investigation of Mr. Atchison in four ways: (i) Not contacting Aztec High School to obtain information relevant to their threat assessment; (ii) sending incorrect information to local law enforcement; (iii) summarily closing the investigation of Mr. Atchison shortly after interviewing him without any provision for following up with local law

enforcement; and (iv) failing to use information that it had compiled on school shooters, their behaviors, and the stressors in their personal histories to evaluate Mr. Atchison. *Id.* at ¶¶ 94–97.  Plaintiff also contends that the Court has original and exclusive jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 1346(b).  *Id.* at ¶¶ 1–2.

On August 7, 2020, Defendant moved to dismiss Plaintiff's complaint for lack of jurisdiction and failure to state a claim.  *Doc. 10.*  It argues that, under the discretionary function exception to the FTCA, the Court lacks subject matter jurisdiction over Plaintiff's negligence claims because the allegations in the complaint do not demonstrate either that the FBI investigators acted outside of the discretion committed to them by law or that this discretion was not the type of judgment shielded by this FTCA exception.  *See id.* at 3, 8–16.  Defendant also contends, in the alternative, that Plaintiff's complaint fails to state a claim since the FTCA only makes the United States liable for a governmental employee's conduct if a similarly situated private individual would be liable under the law of the state in which the conduct occurred and New Mexico law imposes no duty on private individuals to prevent a third person from harming another, absent a special relationship which is not present here.  *See id.* at 3–4, 16–18.

Plaintiff contests both arguments in his response.  *See doc. 19.*  With respect to subject matter jurisdiction, he argues that he has no "burden to plead sufficient facts in his complaint to show the [discretionary function exception] does not apply" and that

"it is not apparent from the face of his complaint that the [discretionary function exception] applies." *Id.* at 4, 5 (emphasis omitted). In doing so, Plaintiff cites the FBI's Domestic Investigations and Operations Guide and an audit from the Department of Justice's Office of Inspector General—*neither* of which is referenced, attached, or otherwise incorporated into his complaint—as establishing non-discretionary duties that FBI investigators violated during their investigation of Mr. Atchison. *Id.* at 5–6, 9–12. In the alternative, Plaintiff contends that the Court must convert Defendant's motion to dismiss into a motion for summary judgment because application of the discretionary function exception is a jurisdictional question that is intertwined with the merits of the case. *Id.* at 6–7. Plaintiff then asserts that the Court must defer ruling on the converted motion for summary judgment until he has had the opportunity to conduct discovery into the FBI's duty to investigate domestic terrorist threats and the policies and procedures that govern its threat assessments. *Id.* at 7–8.

With respect to whether his complaint states a claim, Plaintiff asserts that New Mexico law imposes a duty on private individuals to prevent a third party from harming another "if they had authority to arrest (or detain) a person who posed a threat to [other] persons … or alternatively, if they … exercised actual control over [this person]." *Id.* at 16 (citing *Karbel v. Francis*, 709 P.2d 190, 193–94 (N.M. Ct. App. 1985)) (emphasis and numbering omitted). He then argues that the allegations in his complaint establish that the FBI investigators not only had the authority to detain Mr.

4

Atchison but also exercised actual control over him.  *Id.* at 16–17.  In the alternative, Plaintiff asks the Court for leave to amend his complaint if his allegations do not sufficiently plead that the FBI investigators were similarly situated to the private individuals upon whom *Karbel* imposes a duty of reasonable care.  *Id.* at 17.

## II.    LEGAL STANDARDS

Subject matter jurisdiction is a threshold issue.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (citation omitted).  "Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted).  "[T]he party invoking federal jurisdiction bears the burden of establishing its existence."  *Steel Co.*, 523 U.S. at 104 (citation omitted).

### A.  THE FTCA & SOVEREIGN IMMUNITY

Under the doctrine of sovereign immunity, courts lack subject matter jurisdiction over actions against the United States absent a Congressional waiver.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  In the FTCA, Congress waived the United States' sovereign immunity for claims arising from certain injuries, including those "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).

Congress, however, limited the scope of this waiver in several ways.  First, it subjected the waiver to a private person analog, which restricts the waiver to "circumstances where the United States, *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *See id.* (emphasis added).  Second, Congress excepted several types of claims from the wavier.  *See id.* § 2680(a)–(n).  One such exception is for "[a]ny claim … based upon the exercise or performance or the failure to exercise or perform a *discretionary function* or duty on the part of … an employee of the Government, whether or not the discretion involved be abused."  *Id.* § 2680(a) (emphasis added).

B.  RULE 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to contest a federal court's jurisdiction over the subject matter of a claim by motion.  Fed. R. Civ. P. 12(b)(1).  "However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987) and *Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir. 1991)), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001).  The type of conversion depends on whether the Rule 12(b)(1) motion raises "a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction" or "a

challenge to the actual facts upon which subject matter jurisdiction is based." *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citing *Holt*, 46 F.3d at 1002–03); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999) (citations omitted); *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997) (citations omitted).

A facial attack limits the Court's inquiry to the four corners of the complaint (plus any materials it references or incorporates), presumes the veracity of the factual allegations therein, and requires the Court to determine whether these allegations and any reasonable inferences that may be drawn from them are sufficient to establish its jurisdiction. *See Garling v. U.S. Envtl. Prot. Agency*, 849 F.3d 1289, 1293 & n.3 (10th Cir. 2017) (citations omitted); *Dry v. United States*, 235 F.3d 1249, 1253 (10th Cir. 2000) (citation omitted). If the jurisdictional issue in a facial attack is intertwined with the merits of the claim, the Court must convert it into an attack on whether the complaint states a claim and adjudicate it as a Rule 12(b)(6) motion. *See Franklin Sav. Corp.*, 180 F.3d at 1129–30.

By contrast, a factual attack challenges, rather than presumes, the veracity of a complaint's factual allegations. *See Holt*, 46 F.3d at 1003. When resolving this attack, the Court is not limited to the four corners of the complaint but rather "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*. Considering evidence outside the pleadings in this manner does not require the Court to convert the factual attack into a motion for

summary judgment under Rule 56(a) except where the attack's jurisdictional issue is intertwined with the case's merits. *Id*. *See also Tippett*, 108 F.3d at 1196 (citing *Redmon*, 934 F.2d at 1155).

Here, each attack that Defendant raises on the Court's subject matter jurisdiction in its Rule 12(b)(1) motion is facial, not factual, because it contests the sufficiency, not the veracity, of the complaint's factual allegations. *See doc. 10* at 8.  First, Defendant argues that the allegations, even if true, fail to establish that the FBI investigators' acts and omissions fall outside the scope of the discretionary-function exception. *Id.* at 8–16. As the jurisdictional issues raised by this exception are intertwined with the merits of Plaintiff's case, the Court must adjudicate this attack under Rule 12(b)(6) rather than Rule 12(b)(1). *See Franklin Sav. Corp.*, 180 F.3d at 1129.   Plaintiff's insistence that the Court covert this attack into a motion for summary judgment under Rule 56, *doc. 19* at 6 (citations omitted), ignores the distinction between facial and factual attacks.  As Defendant's attack is facial, conversion into a Rule 12(b)(6) is appropriate and Plaintiff's request for limited discovery under Rule 56(d), *see id.* at 8, is denied as premature.

Second, Defendant contends that the allegations in Plaintiff's complaint, even if true, do not establish the existence of a private person analog in New Mexico law that would hold a similarly-situated private person liable for the FBI investigators' acts and

omissions.[1]  *Id.* at 8, 16–18.  Like the discretionary function exception, the Court must

also resolve this attack under Rule 12(b)(6) because addressing its jurisdictional issues

"requires resolution of an aspect of the substantive claim."  *Pringle v. United States*, 208

F.3d 1220, 1223 (10th Cir. 2000) (citations omitted).  State law is "the source of

substantive liability under the FTCA."  *Meyer*, 510 U.S. at 478.  Determining whether the

alleged facts in Plaintiff's complaint establish the requisite private person analog for

jurisdiction requires the Court to resolve whether New Mexico law would hold a

private person similarly situated to the FBI investigators (and thus the FBI investigators

themselves) negligent based on the alleged facts.  *See* 28 U.S.C. § 1346(b)(1).

C.  RULE 12(b)(6)

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, 'to state a claim to

relief that is plausible on its face.'"  *Leverington v. City of Colorado Springs*, 643 F.3d 719,

723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This standard

does not require "detailed factual allegations," but does require more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl.*

---

[1] Defendant raises this contention under Rule 12(b)(6).  *See doc. 10* at 8, 16–18.  The failure to establish a
private person analog for liability under state law is more properly asserted initially as a jurisdictional
defect rather than a failure to state a claim for relief because the existence of this analog is a prerequisite
for being cognizable under 28 U.S.C. § 1346(b).  *See Meyer*, 510 U.S. at 477.  Ultimately, though, Defendant
is correct to note that Rule 12(b)(6) is the proper standard of review for resolving this jurisdictional attack
because its intersection with the merits of Plaintiff's case requires the Court to adjudicate it under Rule
12(b)(6) rather than Rule 12(b)(1).  *See infra* p. 9.

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  When applying the standard, the Court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).  However, the Court need not accept the truth of any legal conclusions.  *Iqbal*, 556 U.S. at 678.

"The plausibility standard is not akin to a 'probability requirement' but … [does] ask[] for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  A complaint need only to "raise a right to relief above the speculative level . . . on the assumption that all [its] allegations … are true (even if doubtful in fact)."  *Id*. at 555 (citations omitted).  However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S at 557).

## III.   ANALYSIS

The Court must dismiss Plaintiff's claims under Rule 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim.  The FTCA has not waived the United

States' sovereign immunity from liability for the acts and omissions alleged in Plaintiff's complaint for two reasons: (A) the alleged conduct falls within the scope of the discretionary function exception; and (B) there is no private person analog for liability for the alleged conduct in New Mexico law.  But, as there is a chance, albeit an unlikely one, that amendment could cure these defects, the Court's dismissal is without prejudice.

   A. *DISCRETIONARY FUNCTION EXCEPTION*

   The Court must dismiss Plaintiff's complaint because it fails to "allege facts that place its claim[s] facially outside the [discretionary-function] exception."  *See Franklin Sav. Corp.*, 180 F.3d at 1130 (citing *Kiehn v. United States*, 984 F.2d 1100, 1105 n.7 (10th Cir. 1993)).  In *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988), the Supreme Court laid out a conjunctive, two-pronged test to determine whether the discretionary function exception applies to governmental conduct.  First, a court must consider whether the governmental act or omission "involves an element judgment or choice" for the acting employee.  *Id.* (citation omitted).  Second, "a court must determine whether that judgment is of the kind that the discretion function exception was designed to shield."  *Id.*  Plaintiff bears the burden of showing that at least one of the two prongs in the *Berkovitz* test is not met. *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016) (citations omitted); *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008).  He has not done so.

11

1. *Plaintiff's Complaint Fails the First Berkovitz Prong as It Does Not Point to a Federal Statute, Regulation, or Policy that Limited the FBI Investigators' Discretion*.

The factual allegations of Plaintiff's complaint neither establish nor raise a reasonable inference that the acts and omissions of the FBI investigators were devoid of judgment or choice. "As a general matter, law enforcement decisions surrounding the investigation and prosecution of crimes … involve the exercise of discretion." *JGE through Tasso v. United States*, 772 F. App'x 608, 612 (10th Cir. 2019) (unpublished) (quoting *Gonzalez v. United States*, 814 F.3d 1022, 1028 (9th Cir. 2016)). To demonstrate the absence of discretion, Plaintiff must show that a federal statute, regulation, or policy prescribed a particular course of action for the FBI investigators during their investigation of Mr. Atchison. *See Sydnes*, 523 F.3d at 1184 (citing *Berkovitz*, 486 U.S. at 536); *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 972–73 (10th Cir. 1994) (same); *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1538 (10th Cir. 1992) (same).

Plaintiff's complaint makes no such showing. The only constraint that it alleges on the judgment or choice of the FBI investigators is state tort law. *See doc. 2*; *doc. 19* at 9–10. Specifically, the complaint makes allegations related to the duties of the FBI investigators to conduct a reasonable investigation, *see doc. 2* at ¶¶ 31–32, 38–41, 46–53, 85–88, 94, 96–97, and to warn and otherwise provide accurate information to Aztec High School and local law enforcement about Mr. Atchison, *see id.* at ¶¶ 45, 54–56, 89–92, 95. Constraints imposed by state law, though, only satisfy the first prong of the

*Berkovitz* test if there is "a *federal* policy incorporating [them] as a limit on the discretion of federal employees."  *See Sydnes*, 523 F.3d at 1184.  Plaintiff's complaint pleads no such policy.  *See doc. 2.*

The complaint does note the existence of a "School Shooter Threat Assessment" that stresses the importance of inquiring into whether a current or former student has a grievance against a school when evaluating the threat posed by the student to the school.  *Doc. 2* at ¶ 33.  However, the complaint alleges only that the FBI published this Assessment "for use by educators, mental-health professionals, and law-enforcement agencies."  *Id.*  It does not allege that the Assessment required, rather than recommended, a specific course of action for investigating potential school shooters or that FBI investigators were obliged to follow or otherwise bound by its contents.  *See id.*

Plaintiff, in its response to Defendant's motion to dismiss, directs the Court to two documents as evidence of policies that limited the FBI investigators' discretion.  *Doc. 19* at 9, 11 (citing U.S. Dep't of Just., Off. of the Inspector Gen., Audit Div., *The Federal Bureau of Investigation's Terrorist Threat and Suspicious Incident Tracking System*, i, iv (2008) (hereinafter "Audit Report") and Fed. Bureau of Investigation, *Domestic Investigations and Operations Guide* (2016) (hereinafter "Guide")).  *See also doc. 19-1* at ¶¶ 3–4.  However, the Court declines to consider these documents because they are not incorporated into or otherwise referenced in the four corners of Plaintiff's complaint.  *See Alexander v. Oklahoma,* 382 F.3d 1206, 1214 (10th Cir. 2004) (quoting *Nichols v. United*

13

*States*, 796 F.2d 361, 364 (10th Cir. 1986)); *doc. 2*.  Consequently, their contents are

immaterial as to whether the facts that Plaintiff alleges therein are enough to overcome

the first *Berkovitz* prong.[2]  *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d

1081, 1103–04 (10th Cir. 2017).

---

[2] Plaintiff has made no motion to amend his complaint to incorporate these documents and/or their contents.  It is doubtful, though, that an amendment based solely on these documents would amount to more than a futile exercise since the excerpts of these documents that are before the Court do not show that the FBI investigators' acts and omissions during their investigation of Mr. Atchison lacked choice or judgment.  *See Berkovitz*, 486 U.S. at 536.

The Audit Report states that after the September 11 terrorist attacks, "the FBI began to require that every terrorism-related lead from its sources, or from its federal, state, or local partners, be addressed, even if it required the diversion of resources from other priority areas" and that "[r]egardless of the reporting source, the FBI requires that each threat or suspicious incident be reviewed, documented, and assessed to determine if a potential nexus to terrorism exits [sic]."  *Doc. 19-1* at 8, 10.  Insofar as this report is evidence of a FBI policy relevant to the investigation of Mr. Atchison, it evinces a policy requiring FBI investigators to conduct this investigation and assess the threat that Mr. Atchison posed to Aztec High School.  The FBI investigators, as Plaintiff's complaint acknowledges, did just that.  *Doc. 2* at ¶¶ 19–22, 27, 30.  Plaintiff, though, argues that the investigation policy imposes a nondiscretionary duty on the FBI investigators to conduct a reasonable investigation, thereby bringing their conduct outside of the discretionary-function exception.  *See doc. 19* at 10–11.  This argument, however, contravenes the same principle as the argument that Plaintiff makes based on the allegations in its complaint: state tort law is not a limit on federal employees' discretion absent a federal policy incorporating it as such.  *See Sydnes*, 523 F.3d at 1184.  The excerpts of the Audit Report in the record do not evince the existence of any such policy.  *See doc. 19-1.*  In fact, there is some evidence that the Audit Report supports the opposite contention, that FBI investigators have substantial investigatory discretion.  *See doc. 20* at 4–5 (citations omitted) (arguing that the Audit Report, in pages not excerpted into the record, describes the threat resolution process as "rel[ying] heavily on the investigative judgment of [FBI] agents").

The Audit Report also states that "an FBI supervisor is responsible for reviewing and closing each threat or suspicious incident" logged in the FBI's threat tracking system and that when doing so, "[t]he supervisor must determine whether the threat is satisfactorily addressed or if additional investigation, analysis, or incident updating is required."  *Doc. 19-1* at 12–13.  Plaintiff casts these statements as evidence of "standards governing how a threat assessment is to be addressed."  *Doc. 19* at 12.  But, even if such standards do exist, they could, as Plaintiff acknowledges, require the supervisor to make his assessment based on his discretion and judgment rather than itemized criteria.  *See id.*  Plaintiff must do more than plead the possibility of a policy that could limit FBI supervisors' discretion.  *See Hardscrabble Ranch*, 840 F.3d at 1220 (holding that the plaintiff "must show that the action was not 'a matter of choice for the acting employee'" (quoting *Berkovitz*, 486 U.S. at 536)).

Finally, the Guide requires that "[w]hen an employee has information that a structure or conveyance which can be identified through reasonable means is the subject of a *credible* threat which could cause a loss of life or serious bodily injury to occupants, the employee, in consultation with his or her supervisor, *must* provide expeditious notification to other law enforcement agencies that have

2.  *Plaintiff's Complaint Fails the Second Berkovitz Prong Since the Discretion of the FBI Investigators Investigating the Threat Posed by Mr. Atchison is the Kind of Judgment the Discretionary Function Exception Was Designed to Shield.*

The decisions made by the FBI investigators during their investigation of Mr. Atchison are the kinds of judgment that the discretionary function was designed to shield.  "[T]he purpose of the exception is to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'"  *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)).  "[W]hen properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'"  *Id.* (quoting *Berkovitz*, 486 U.S. at 537).  "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion … but on the nature of the actions taken and on whether they are susceptible to policy analysis."  *Id.* at 325.  The Court must "presume that a government agent's discretionary actions are grounded in policy."  *Hardscrabble Ranch*, 840 F.3d at 1222 (citing *Gaubert*, 499

---

jurisdiction concerning the threat."  *Doc. 19-1* at 18–19 (emphasis added).  Insofar as this document establishes the existence of a policy limiting the discretion that the FBI investigators enjoyed in their investigation of Mr. Atchison, it establishes a requirement to inform local law enforcement of the threat posed by Mr. Atchison if it was credible.  Information sharing, though, requires law enforcement officers to make a myriad of judgment calls, even where a policy contains mandatory-sounding language.  *Gonzalez*, 814 F.3d at 1029–30.  This is especially true if the trigger for sharing is a credibility determination, "a decision fraught with judgment based on context, experience, and expertise," and no criteria for assessing credibility is provided.  *See id.* at 1030.  As the information policy in the Guide does not specify any criteria for assessing credibility, it does not prescribe a particular course of non-discretionary conduct that the FBI investigators had to follow.  *See id.*

U.S. at 324–25).  "[I]t is up to the challenger to allege facts showing that the actions were actually not policy-oriented."  *Id.* (citing *Gaubert*, 499 U.S. at 324–25).

The allegations in Plaintiff's complaint do not rebut the presumption that the choices made by the FBI investigators during their investigation of Mr. Atchison entailed considerations of public policy.  Rather, they second-guess the reasonableness of several of these choices, specifically: the FBI investigators' decision to close the investigation without pressing charges or determining whether Mr. Atchison had a grievance against Aztec High School, *doc. 2.* at ¶¶ 31–32, 38–41, 81; their decision to not conduct a thorough review of Mr. Atchison's computer and online posts, *id.* at ¶¶ 46–47; and their decision to not monitor Mr. Atchison after closing the investigation, *id.* at ¶¶ 48–53.  These decisions' reasonableness, however, is irrelevant to their relationship to public policy.  *See Tippett*, 108 F.3d at 1199.

Courts inside and outside the Tenth Circuit have long held that law enforcement decisions related to whom to investigate and how much to do so involve public policy considerations.  *See Awad v. United States*, 807 F. App'x 876, 881 (10th Cir. 2020) (unpublished) (citations omitted); *Tsolmon v. United States*, 841 F.3d 378, 383 (5th Cir. 2016) (citation omitted); *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) (citations omitted); *Hobdy v. United States*, 968 F.2d 20, 1992 WL 149871, at *2 (10th Cir. June 26, 1992) (table publication) (citations omitted); *Kelly v. United States*, 924 F.2d 355, 362 (1st Cir. 1991); *Pooler v. United States*, 787 F.2d 868, 871 (3d Cir. 1986), *abrogated on*

*other grounds by Millbrook v. United States*, 569 U.S. 50 (2013);  *Cortez v. Equal Emp.*

*Opportunity Comm'n*, 585 F. Supp. 2d 1273, 1292 (D.N.M. 2007) (citation omitted);

*Nogueras-Cartagena v. United States*, 172 F. Supp. 2d 296, 318–19 (D.P.R. 2001).  Plaintiff's

complaint contains no allegations as to why that is not also the case here.[3]  *See doc. 2*.

The allegations in Plaintiff's complaint also do not rebut the presumption that

the choice of the FBI investigators to not warn Aztec High School and local law

enforcement about Mr. Atchison involved public policy considerations.  Rather, they

second-guess the reasonableness of this choice, *doc. 2* at ¶¶ 45, 54–56, 89–92, 95–96,

which has no bearing on its public policy foundations.  *See Tippett*, 108 F.3d at 1199.  The

Ninth and Tenth Circuits have held that law enforcement decisions regarding the

dissemination of information about possible threats entail considerations of public

policy.  *See JGE through Tasso*, 772 F. App'x at 612; *Gonzalez*, 814 F.3d at 1032–33; *Taitt v.*

*United States*, 770 F.2d 890, 894 (10th Cir. 1985).  There are no allegations in Plaintiff's

complaint as to why that is not also the case here.  *See doc. 2*.

---

[3] Plaintiff does contend that "any decision to investigate the 2016 targeted threat against [Aztec High School] would not implicate economic or political policy" because the FBI was required to review, document, and assess each threat to determine if a possible nexus to terrorism existed.  *Doc. 19* at 6 (emphasis omitted) (citing Audit Report, at iv).  Like Plaintiff's other allegations related to the Audit Report, this allegation does not appear in its complaint and so has no bearing on whether the complaint contains sufficient factual allegations to rebut the presumption that the FBI investigators' conduct was grounded in public policy considerations.  It is also unlikely that amending the complaint to include this allegation would be more than a futile exercise.  The target of Plaintiff's challenge is not the FBI investigators' decision to investigate the threat posed by Mr. Atchison but rather the choices and judgments that the investigators made during the investigation itself.  *See doc. 2* at ¶¶ 31–32, 38–41, 46–53, 81, 88, 94–97.  The excerpts of the Audit Report before the Court mandate an investigation but do not speak to choices and judgments made during it.  As such, they do not rebut the presumption that the choices and judgments made by the FBI investigators during the investigation had a public policy basis.

Plaintiff, in his Response, argues that specific decisions made by the FBI investigators did not implicate policy considerations. *See doc. 19* at 15. He asks "[w]hat possible economic, social or political factors could have legitimately been at play in forwarding [Aztec Police Department] information on the wrong suspect…," "what policy considerations did Bureau special agents assessing [Mr.] Atchison's targeted threat … have to weigh in considering whether to confirm if he had a possible motive for making such a threat against his former school," and "how costly or politically intrusive would it have been for FBI agents who went out to Aztec to interview Atchison to contact [Aztec High School] and confirm if [Mr.] Atchison had a possible motive." *Id.* Plaintiff, however, confuses the issue. The inquiry is not whether the FBI investigators themselves weighed public policy considerations when making investigatory decisions but rather whether the decisions themselves are of the kind that entail such considerations. *See Gaubert*, 499 U.S. at 325. Plaintiff bears the burden of alleging facts showing that rebut the presumption that investigatory decisions, like those made by the FBI investigators, entail these considerations. *Hardscrabble Ranch*, 840 F.3d at 1222. His complaint does not meet it.

* * *

Plaintiff's complaint fails the *Berkovitz* test. Its allegations, on their face, do not demonstrate that the FBI investigators' acts and omissions during their investigations of Mr. Atchison lacked an element of judgment and choice or rebut the presumption that

choices like this are grounded in public policy.  As such, the discretionary exception

applies to Plaintiff's claims and the Court must dismiss them for lack of subject matter

jurisdiction and failure to state a claim.

    *B.  PRIVATE PERSON ANALOG*

       The Court also has to dismiss Plaintiff's complaint for lack of subject matter

jurisdiction and failure to state a claim because he has not shown the existence of a

private person analog in New Mexico law that would render a similarly-situated

private citizen liable for the FBI investigators' alleged acts and omissions.  Under the

FTCA, the United States only "waives sovereign immunity 'under circumstances' where

local law would make a '*private person*' liable in tort."  *United States v. Olson*, 546 U.S. 43,

44 (2005).  The words "under circumstances" "do not restrict a court's inquiry to the

*same circumstances* but require it to look further afield."  *See id.* at 46 (citing *Indian Towing*

*Co. v. United States*, 350 U.S. 61, 64 (1955) and S. Rep. No. 79-1400, at 32 (1946)).  Giving

these words their natural meaning, the private person analog is only satisfied where

local law "would impose liability on private persons or corporations under similar

circumstances."  *Rayonier Inc. v. United States*, 352 U.S. 315, 318 (1957).

       The local law in this case is that of New Mexico since "every alleged act or

omission at issued occurred [here]."  *JGE v. United States*, CV 14-710 MV/WPL, 2016 WL

7438011, at *10 (D.N.M. Aug. 9, 2016) (unpublished) (citing *E.P. ex rel. Portenier v. United*

*States*, 835 F. Supp. 2d 1109, 1115 (D. Kan. 2011)).  "Under New Mexico law, a

'negligence claim requires that the plaintiff establish four elements: (1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) the breach of duty as cause of the injury.'" *Id.* at *11 (quoting *Zamora v. St. Vincent Hosp.*, 335 P.3d 1243, 1249 (N.M. 2014) and citing *Tapia v. City of Albuquerque*, 10 F. Supp. 3d 1207, 1302 (D.N.M. 2014)).  Consistent with most other jurisdictions, New Mexico courts hold that "[w]hether a duty exists is a question of law for the courts to decide."  *E.g.*, *Herrera v. Quality Pontiac*, 73 P.3d 181, 186 (N.M. 2003) (citations omitted).  As the party invoking the Court's jurisdiction, Plaintiff bears the burden of showing that a private person similarly situated to the FBI investigators would have owed Ms. Marquez a duty.  *See JGE*, CV 14-710 MW/WPL, 2016 WL 7438011, at *12.

Plaintiff has not done so.  In his complaint, Plaintiff alleges that, under New Mexico law, law enforcement officers similarly situated to the FBI investigators would have owed Ms. Marquez a duty "to exercise reasonable care in the course of an investigation."  *Doc. 2* at ¶¶ 4–5 (citing *Torres v. New Mexico*, 894 P.2d 386, 392–93 (N.M. 1995)).  This duty, however, is not a private person analog since it is owed by public employees, not private citizens.  *See Ewell v. United States*, 776 F.2d 246, 249 (10th Cir. 1985)).  In its response to Defendant's motion, Plaintiff contends that, under New Mexico law, two private individuals similarly situated to the FBI investigators would have owed Ms. Marquez a duty of reasonable care: (1) an individual who had the

20

authority to arrest a person who posed a threat to persons like her; or (2) an individual who exercised actual control over such a person. *See doc. 19* at 3, 16–18 (citing *Karbel*, 709 P.2d at 193–94). Neither of these individuals, however, is the similarly situated private person that Plaintiff claims.

The first individual in *Karbel* is a quasi-government actor, not private citizen. In *Karbel*, the New Mexico Court of Appeals addressed the issue of whether private security guards at a community college had "a duty to detain, or at least not to direct back to the road, a drunken driver they had stopped on campus." 709 P.2d at 192. Relying on the New Mexico Supreme Court's holding in *Schear v. Board of County Commissioners of Bernalillo County* that every sheriff, deputy sheriff, constable, and peace office had a duty to investigate all violations of the law, the Court of Appeals held that the private security guards had a duty to detain the drunken driver if the state had given them power and authority to arrest him after observing him violate state law on campus. *Id.* at 192–93. In so holding, however, the Court of Appeals expressly distinguished the private security guards from ordinary citizens and found that the latter had no such duty. *Id.* at 192 ("Had the guards been ordinary citizens who witnessed the driver get out of his car and stagger about in a drunken condition, they would have had no duty to attempt to stop him from driving."). The first *Karbel* individual, therefore, is not a *private* person similarly situated to the FBI investigators.

The second individual in *Karbel*, while a private citizen, is not similarly situated to the FBI investigators.  This individual is someone who has assumed actual control over another "whom he knows or should know to be likely to cause harm to others, if not controlled."  *Id.* at 193 (citing Restatement (Second) of Torts § 319 (1965)).  Actual control "must include the right or ability to control another's conduct."  *Grover v. Stechel*, 45 P.3d 80, 84 (N.M. Ct. App. 2002).  It exists "[w]hen one party is in the custodial care of another."  *City of Belen v. Harrell*, 603 P.2d 711, 713 (N.M. 1979).  Actual control is present between a jailer and a prisoner, *id.*, and where a drunk driver complies with orders issued by uniformed private security guards to stop walking away, talk to them, and vacate an area if the guards had the means to detain him and threatened to do so.  *See Karbel*, 709 P.2d at 193.  Actual control is not present based solely on a parent-child relationship, *see Johnstone v. City of Albuquerque*, 145 P.3d 76, 82 (N.M. Ct. App. 2006), or control of another's finances, *Grover*, 45 P.3d at 84.

The allegations in Plaintiff's complaint are insufficient to show that the FBI investigators exercised actual control over Mr. Atchison.  The only allegation that speaks to any control exercised by the FBI investigators over Mr. Atchison is that they once interviewed him and other members of his family after he had used his brother's computer to post a comment to an online gaming website about "acquir[ing] a cheap assault rifle to commit a mass shooting at his former school."  *Doc. 2* at ¶¶ 19–21.  New Mexico courts do not appear to have considered the issue of whether questioning or

22

interrogation alone may be enough to establish actual control.  However, courts that have considered the issue have held that it is not.  *See Crider v. United States*, 885 F.2d 294, 295, 300 (5th Cir. 1989) (questioning during traffic stop); *Kalmbach v. Hill*, No. 07-786-KI, 2009 WL 395156, at *7 (D. Or. Feb. 2, 2009) (unpublished) (same); *Wongittilin v. Alaska*, 36 P.3d 678, 683 (Alaska 2001) (questioning at city hall); *Nelson v. Driscoll*, 983 P.2d. 972, 975, 979 (Mont. 1999) (questioning during a traffic stop).  The Court sees no reason to depart from these courts' reasoned holdings.

Plaintiff has failed to show that New Mexico law imposes a duty on private persons similarly situated to the FBI investigators (and thus on the FBI investigators themselves). Absent the establishment of this private person analog, the United States retains its immunity from negligence claims arising from the investigators' acts and omissions.  *See* 28 U.S.C. § 1346(b)(1).  As such, the Court must dismiss Plaintiff's claims for want of jurisdiction and failure to state a claim.[4]

---

[4] Plaintiff requests that the Court grant him leave to amend his complaint if "the Court finds that [he] has not specifically pleaded [that] a private person has a duty to exercise reasonable care under the circumstances identified in *Karbel*." *Doc. 19* at 17.  Plaintiff, however, has not filed an actual motion to amend his complaint under Rule 15(a)(2) or otherwise apprised the Court and Defendant of his proposed amendments as Local Rule 15.1 requires.  As such, the Court exercises its discretion to deny this request to amend without prejudice.  *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) ("A 'request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is … not a motion to amend.'" (quoting *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010))); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994) ("[A] 'bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought …—does not constitute a motion within the contemplation of Rule 15(a).'" (quoting *Confederate Memorial Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993))).  If Plaintiff were to file an actual motion to amend, the Court must grant it "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure

*C. DISMISSAL*

The Court's dismissal must be without prejudice to Plaintiff filing an amended complaint.  Dismissal with prejudice under Rule 12(b)(6) without an opportunity to seek leave to amend is appropriate only if amendment would be futile.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997)).  "If it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."  *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (quoting 6 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1483 (2d ed. 1990)).  "This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading."  5B Arthur R. Miller, Mary Kay Kane, & A. Benjamin Spencer, *Federal Practice and Procedure* § 1357 (3d. ed. 2000).  A court, however, does not abuse this discretion by dismissing a complaint with prejudice for failure to state a claim if the plaintiff has had an opportunity to seek its leave to amend it and declined to do so. *See Pyle v. Woods*, 874 F.3d 1257, 1262, 1267 (10th Cir. 2017).

---

deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  To overcome futility, any amendments Plaintiff proposes must establish not only a private person analog but also the inapplicability of the discretionary function exception.

Based on the record before it, the Court has some doubt about Plaintiff's ability to amend his complaint to add allegations sufficient to establish not only a private person analog but also the inapplicability of the discretionary function exception. It cannot conclude, however, that these defects are incurable via amendment. *Cf. Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190–91 (10th Cir. 2014) (finding amendment futile where a complaint's allegations established the defense of issue preclusion); *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (holding that amendment of certain claims in a complaint was futile where its allegations substantiated statute of limitations and issue preclusion defenses); *Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001) (finding amendment of Eighth Amendment claims futile where the complaint's allegations established that the defendant had not acted with deliberate indifference). As such, the Court must afford Plaintiff the opportunity to seeks its leave to amend his complaint.

## IV.    CONCLUSION

Due to a lack of subject matter jurisdiction and the failure of Plaintiff's complaint to state a claim, the Court must dismiss the complaint under Rule 12(b)(6) without prejudice to the filing of an amended complaint. The FTCA subjects its waiver of the United States' sovereign immunity from liability arising from government employees' negligent acts and omissions to several conditions and exceptions. One condition is the private person analog: the law of the place where the negligent conduct occurred must impose liability on a private person for the same conduct in similar circumstances. One

exception is for discretionary functions, conduct that involves a judgment or choice concerning matters of public policy. Plaintiff has failed to show that the conduct alleged in his complaint was free from such a judgment or choice and is cognizable against a similarly situated private person under New Mexico law. As a result, the FTCA does not give the Court has no jurisdiction over this conduct and Plaintiff's complaint fails to state a claim for relief.

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (*doc. 10*) is GRANTED and that all of Plaintiff's claims in its complaint are DISMISSED WITHOUT PREJUDICE to Plaintiff filing an amended complaint.

IT IS ALSO ORDERED that the deadline for Plaintiff to move for the Court's leave to amend his complaint under Federal Rule of Civil Procedure 15(a)(2) is fourteen (14) days from issuance of this order. Should Plaintiff not file a motion to amend the complaint by this deadline, the dismissal of his claims shall be converted to DISMISSED WITH PREJUDICE.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**